# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

PAMELA J. WILLIAMS,                          Case No. 1:20-cv-430
      Plaintiff,                            Litkovitz, M.J.

      vs.

COMMISSIONER OF                              **ORDER**
SOCIAL SECURITY,
      Defendant.

Plaintiff Pamela J. Williams brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security

("Commissioner") denying her application for disability insurance benefits ("DIB").  This matter

is before the Court on plaintiff's Statement of Errors (Doc. 13), the Commissioner's response in

opposition (Doc. 18), and plaintiff's reply memorandum (Doc. 21).

## I. Procedural Background

Plaintiff filed her application for DIB in January 2017, alleging disability since May 28,

2015, due to headaches, hypertension, neck pain, pancreatic mass, restless leg, irritable bowel

syndrome, macrocytosis, artery aneurysms, and knee replacements of both knees.  (Tr. 188).  The

application was denied initially and upon reconsideration.  Plaintiff, through counsel, requested

and was granted a *de novo* hearing before administrative law judge ("ALJ") Cristen Meadows,

on March 26, 2019.  Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ

hearing.  (Tr. 25-70).  On March 29, 2019, the ALJ issued a decision denying plaintiff's DIB

application.   (Tr. 9-24).  The Appeals Council denied plaintiff's request for review and adopted

the ALJ's decision as the Commissioner's final decision.  This matter is properly before this

Court for review.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id*.; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th

Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2020.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since May 28, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: degenerative joint disease of the right knee, status-post replacement; history of left-knee replacement; degenerative disc disease; and aneurysm of the abdominal aorta and aneurysm of the iliac artery (20 CFR 404.1520(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, [the ALJ] find[s] that the [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except for the following restrictions: She could frequently climb ramps or stairs but could never climb ladders, ropes or scaffolds. She could occasionally balance, stoop, kneel, crouch or crawl. She could tolerate no exposure to hazards, such as unprotected heights or dangerous moving machinery.
>
> 6. The [plaintiff] is capable of performing past relevant work as an examiner (169.267-014). This work does not require the performance of work-related activities precluded by the [plaintiff]'s residual functional capacity (20 CFR 404.1565).
>
> 7. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from May 28, 2015, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 14-20).

3

### C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).  *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D.  Medical Evidence**

Years before her alleged onset date of May 28, 2015, plaintiff underwent bilateral knee replacements.  (Tr. 237).

On October 7, 2015, plaintiff presented to the emergency department with the left side of her body spasming.  (Tr. 334-36).  Plaintiff denied chest pain, shortness of breath, and swelling of her extremities.  (Tr. 336).  Plaintiff reported "jumping spasms of her left leg and arm intermittently mostly in her left leg [and] every 5 to 10 seconds she will jerk her legs suddenly and states that it is spasming[.]"  (Tr. 335).  On examination, however, there existed "no muscle contraction palpable, no spasm palpable and the calf [was] nontender and distal pulses and sensation [were] intact."  (*Id*.).  Plaintiff reported feeling "much better" and the "twitching and jumping muscles seemed to resolve" after she was given IV Valium.  (Tr. 338).  It was reported that plaintiff had "some mild hypokalemia," but it was not "significant enough to cause [] her symptoms."  (*Id*.).

On April 5, 2016, plaintiff had an appointment with orthopedic surgeon Dr. Clyde Henderson.  (*Id*.).  On examination, Dr. Henderson reported plaintiff had an effusion in her right knee; her knee had a range of motion from 0-120 degrees; and her knee slightly hyperextended with 2+ valgus 1+ varus laxity.  (Tr. 238).  He noted that plaintiff had good pulses in her foot; her bilateral ankle and foot edema was nonpitting in nature; her Homans sign was negative; there was no calf tenderness present; and the neurovascular status of the right lower extremity was intact.  (*Id*.).  An x-ray of plaintiff's right knee showed a well-aligned knee replacement arthroplasty, some lucency underneath the anterior aspect of the trachea on the lateral projection, and slight lucency around one of the anchoring holds for the tibial component screw that was

subtle and not absolute. (*Id.*). Dr. Henderson instructed plaintiff to do quadricep strengthening exercises and return in about three weeks. (Tr. 239).

On October 4, 2016, plaintiff saw Dr. Henderson for a follow-up visit. (Tr. 241). On right knee examination, Dr. Henderson reported that plaintiff's knee lacked the last five degrees of extension and flexed 110 degrees, but her knee did not exhibit clicking or clunking on range of motion. He also noted that mild diffuse swelling was present, but no redness was noted. (Tr. 243). Dr. Henderson opined that plaintiff's right knee was "stable." (*Id.*). An April 2016 bone scan showed mild asymmetric pooling over the distal right femur with more asymmetric uptake about the right distal femur and proximal tibia on delayed imaging. (*Id.*). Dr. Henderson stated that the "bone scan [was] not really hot" and reported only a "mild increase in uptake." (*Id.*). He treated plaintiff with stretching exercises and anti-inflammatories. (*Id.*).

Plaintiff had an initial physical therapy assessment on October 17, 2016 with physical therapist Justin Jorgensen. (Tr. 287). Plaintiff reported difficulty ascending and descending stairs, and she rated her pain a 10/10 at rest and with activity. (*Id.*). Plaintiff reported that the pain was affecting her ability to sleep; she was able to walk only about five to ten minutes; and she shopped for groceries but had to use the cart. (*Id.*). Plaintiff denied any falls but reported that her right knee gave out on her at times. (*Id.*). Mr. Jorgensen assessed plaintiff with decreased functional mobility, range of motion, strength, endurance, and balance. (Tr. 289). Mr. Jorgensen recommended plaintiff attend physical therapy two to three times per week for six weeks. (*Id.*; *see also* Tr. 295). Despite this recommendation, plaintiff did not engage in any physical therapy and was thereafter discharged on April 5, 2017. (Tr. 285).[1]

---

[1] The Court notes that plaintiff testified at the hearing that plaintiff stopped physical therapy "after [her] most recent knee surgery" because of "[i]nsurance." (Tr. 61). The record shows that plaintiff's most recent knee surgery occurred on July 10, 2017 (Tr. 1023-25) which was *after* plaintiff's discharge from physical therapy on April 5,

On February 28, 2017, plaintiff presented to Dr. Henderson with a chief complaint of right knee pain. On examination, Dr. Henderson reported mild effusion of the right knee and 1/2-2+ varus laxity and 1+ valgus laxity of the knee. He noted that the knee fully extended and flexed 120 degrees and was not mildly diffusely tender, and the neurovascular status was intact. (Tr. 247). Dr. Henderson opined that plaintiff's "pain [was] due to instability rather than loosening or infection." (*Id*.). Dr. Henderson stated he will proceed with revision surgery to totally remove the knee or revise part or all of it. (*Id*.).

On April 15, 2017, plaintiff presented to the emergency department after she fell on uneven concrete in a parking lot. (Tr. 962). Plaintiff reported that "she was walking into the corner grocery store when she missed the concrete step only to fall face first on the concrete." (*Id*.). CT scans of plaintiff's head and cervical spine were unremarkable. (Tr. 965). Plaintiff had mild tissue swelling on her right knee and a small joint effusion. (*Id*.). Plaintiff was discharged the same day in stable condition and prescribed Naprosyn, Flexeril, and Ultram. (*Id*.).

On July 10, 2017, Dr. Henderson performed plaintiff's right knee revision surgery without complication. (Tr. 1023-25). On August 22, 2017, plaintiff presented to Dr. Henderson for a postoperative evaluation status following her right knee revision surgery. (Tr. 249). Plaintiff reported she was "using a cane" and was engaging in home physical therapy. Plaintiff also reported that she was "still experiencing some pain and [was] having some difficulty with rehabilitation." (*Id*.). Dr. Henderson's physical examination of her knee revealed a well-healed midline incision with mild soft tissue swelling; soft swelling on the feet; no drainage or calf tenderness; and some tenderness along the proximal tibia. (*Id*.). He reported that her range of

2017. There is no explanation offered by plaintiff, or demonstrated by the record, why plaintiff failed to engage in physical therapy that occurred prior to her knee surgery on July 10, 2017.

motion was 3-140 degrees; her knee was neurovascularly intact; and 2+ dorsalis pedis and 1+ posterior tibial pulses were present. (*Id*.). Anteroposterior and lateral x-rays revealed excellent alignment of the total knee prosthesis with no loosening or fractures noted. (Tr. 250). Plaintiff was told to continue her home exercise program and outpatient physical therapy. (*Id*.).

On September 9, 2017, plaintiff presented to Dr. Richard Fries to follow up on her abdominal and bilateral common iliac artery aneurisms. (Tr. 1010).[2] On examination, Dr. Fries reported that plaintiff was alert, cooperative, and in no distress; had a regular heart rate and rhythm; had a soft, non-tender abdomen with normal bowel sounds and no masses or organomegaly; and had normal extremities, no cyanosis or edema and a healed bilateral knee surgical scar. (Tr. 1011). Dr. Fries stated that plaintiff's abdominal aortic aneurism had minimally changed compared to the February 21, 2017 study. (Tr. 1012; *see* Tr. 887-90). He recommended yearly surveillance and opined that there had been "no interval progression." (*Id*.).

On April 13, 2018, plaintiff was seen by physical therapist Sandy Crothers for the completion of an FCE. (Tr. 992-1000). Plaintiff reported that "her primary issue [was] hand weakness." (Tr. 992). Plaintiff stated that she had thumb pain and swelling for over a year and the pain was worse in her left thumb. (Tr. 993). Plaintiff also reported that the pain in her hands limited her ability to grasp objects and hold items with both hands such as driving and opening jars and cans. (*Id*.). Plaintiff stated that she had difficulty with household chores, i.e., sweeping, vacuuming, and holding cooking utensils and pans because of the pain in her hands. (*Id*.). Plaintiff also reported pain in her lower back, severe cramping in both legs, and daily episodes of sudden onset dizziness. (*Id*.).

---

[2] A November 2016 abdominal CT scan depicted aneurysms in plaintiff's right and left common iliac arteries. (Tr. 267-68; *see also* Tr. 530).

Ms. Crothers opined in the FCE that plaintiff's "material handling place[d] her in the sedentary category primarily limited by her left thumb pain." (Tr. 1000). Ms. Crothers stated that plaintiff demonstrated impaired balance with her agility testing but no loss of balance in the walking test. (*Id*.). She explained that plaintiff demonstrated significant decline in her strength of her left hand when compared to her occupational therapy evaluation on March 27, 2018.[3] She explained that the inconsistency could have indicated "potential inconsistency of effort." (*Id*.). Ms. Crothers espoused numerous limitations and restrictions and recommended that plaintiff continue with her occupational therapy and would benefit from a referral to physical therapy for her dizziness. (*Id*.).

On May 30, 2018, plaintiff presented to Dr. Stephen Wilson with pain in her right knee especially when encountering stairs. (Tr. 1015). Dr. Wilson stated, "She had a right total knee done by Dr. Clyde Henderson approximately [one] year ago. For some reason she has not followed up in over a year." (*Id*.). Musculoskeletal examination revealed anterior knee pain with tenderness both anteriorly and medially. (Tr. 1018). Dr. Wilson reported plaintiff exhibited severe hyperpronation and had a history of pes planus. (*Id*.). Dr. Wilson recommended that plaintiff "get some arch supports and wear more supportive shoes and not wear flip-flops which she [was] wearing today." (*Id*.).

From July 19, 2018 to August 22, 2018, plaintiff completed nine physical therapy sessions through American Mercy Home Care. (Tr. 1041-1117). The physical therapy primarily focused on plaintiff's ambulatory abilities, gait, and balance. (*See* Tr. 1057, 1064, 1066, 1072, 1074, 1082, 1089, 1095). On August 22, 2018, plaintiff was discharged from physical therapy.

---

[3] The Court is unable to find any occupational therapy evaluation for this date in the record. The ALJ similarly stated, "Although [plaintiff] indicated that she attended physical therapy for this condition, the record does not document such treatment." (Tr. 15).

(Tr. 1100-1101).  On that date, plaintiff's pain was zero on a pain scale of zero to ten.  (Tr. 1101).  The physical therapist reported that plaintiff's bilateral upper and lower extremities were within functional limits (Tr. 1103), and she was within functional limits on her balance and ambulation/gait.  (Tr. 1105).  Plaintiff was able to do the following activities unaided and with no assistance: groom and feed herself; get clothes and shoes out of closets and drawers, put them on, and remove them; bathe herself in the shower or tub; get to and from the toilet and transfer; manager her toilet hygiene and clothing management; and "able to independently walk on even and uneven surfaces and negotiate stairs with or without railings (specifically: needs no human assistance or assistive device)."  (Tr. 1104-05).  On discharge, outpatient rehabilitation was ordered, and it was reported that "[a]ll goals met.  Pt MI with all mobility."  (Tr. 1107).

On  September 11, 2018, plaintiff established care with Dr. Richard Banks, Jr.  (Tr. 1120).  Dr. Banks reported plaintiff's hypertension had "gradually improved since onset [and] [t]he problem [was] controlled."  (*Id*.).  Dr. Banks noted plaintiff's neurological symptoms included focal sensory loss and loss of balance.  He stated that the neurological problem had an onset date of February 2018 and "developed gradually" and had "been gradually worsening since onset."  (*Id*.).  Dr. Banks noted that plaintiff had been smoking a pack of cigarettes every day for the last twenty years and consumes the equivalent or three alcoholic drinks per week.  (Tr. 1121).  On examination, Dr. Banks reported that plaintiff was oriented to person, place, and time and appeared well-developed and well nourished; had redundant skin in the abdominal region; had a supple neck with a normal range of motion and no Jugular Vein Distention ("JVD"), tracheal deviation, or thyromegaly; had a normal cardiovascular rate with a regular rhythm and intact distal pulses with no murmur; had normal breath with no stridor, respiratory distress, wheezes, rales, or tenderness; and had mild diffuse tenderness in her abdomen but no rebounding or

guarding.  (Tr. 1122-23).  Dr. Banks observed plaintiff "[w]alking with a cane."  (Tr. 1123).  Dr. Banks assessed plaintiff with abdominal aortic aneurysm without rupture, polyneuropathy associated with underlying disease, tobacco use disorder, essential hypertension, and generalized headaches.  (*Id*.).

On October 3, 2018, plaintiff presented to Dr. Banks complaining of foot pain, diarrhea, hypocalcemia, and malnutrition.  (Tr. 1138).  On examination, Dr. Banks reported plaintiff was oriented to person, place, and time and appeared well-developed and well-nourished; had muscle wasting and redundant skin; had a supple neck with a normal range of motion and no JVD, tracheal deviation, or thyromegaly; had a normal cardiovascular rate with a regular rhythm and normal heart sounds; and had normal effort and breath with no stridor, respiratory distress, or rales.  (Tr. 1141).  Dr. Banks observed plaintiff's left leg was larger than her right leg, and it had redness, increased warmth, and skin breakdown in the lower leg and foot.  (Tr. 1138).

On December 11, 2018, plaintiff presented to Dr. Banks for a follow-up visit with chief complaints of hand and leg pain.  (Tr. 1151).  Plaintiff stated her pain was present in her left and right hand at the base of both thumbs.  (*Id*.).  She described the pain as shooting and aching. (*Id*.).  Plaintiff stated that the symptoms were aggravated by lifting, but non-steroidal anti-inflammatory drugs provided mild relief.  (*Id*.).  Plaintiff reported her leg pain was moderate in both legs and was burning and shooting.  (*Id*.).  Plaintiff reported that she used Gabapentin in the past with improvement and wanted to use it again to treat her symptoms.  (*Id*.).  On examination, plaintiff was oriented to person, place, and time and appeared well-developed and well-nourished; had a supple neck with normal range of motion and no JVD, tracheal deviation, or thyromegaly; had a normal cardiovascular rate with a regular rhythm and normal heart sounds; had normal effort and breath with no stridor, respiratory distress, or rales; and had a rash on her

11

right chin. (Tr. 1153-54). Dr. Banks assessed plaintiff with polyneuropathy associated with underlying disease and prescribed Gabapentin. (Tr. 1154).[4]

### E. Specific Errors

On appeal, plaintiff alleges the ALJ erred by (1) not including the use of a cane in the RFC; (2) improperly weighing the FCE completed by physical therapist Ms. Crothers; and (3) finding plaintiff's statements concerning the intensity, persistence, and limiting effects of her impairments were inconsistent with the medical evidence. (Doc. 13). The Commissioner argues that the ALJ did not err in failing to include the use of a cane in the RFC because no medical evidence, other than plaintiff's own testimony at the hearing, established the need for a cane. (Doc. 18 at PAGEID 1452-55). The Commissioner further argues that the ALJ properly assigned limited weight to the FCE because the ALJ was not required to give any special weight to the opinion of a non-acceptable medical source. (*Id*. at PAGEID 1455-57). The Commissioner finally argues that substantial evidence supports the ALJ's evaluation of plaintiff's subjective statements of pain and limitations. (*Id*. at PAGEID 1457-59).

### 1. The ALJ did not err by failing to incorporate the use of a cane into the RFC

In her first assignment of error, plaintiff alleges that the ALJ erred by "not including [the] use of a cane in her decided RFC." (Doc. 13 at PAGEID 1427). Exclusively citing to her own testimony at the ALJ hearing in support, plaintiff contends that the "medical record" establishes that plaintiff used a cane beginning in February 2018 "due to continued loss of balance, loss of consciousness (once a week on average), and falls[.]" (*Id*.). Plaintiff argues that it was "plain error for the ALJ to not include [the use of a cane] in her decided RFC" because "the use of a

---

[4] The Court notes that plaintiff was hospitalized for several days in December 2018 for cellulitis in her arms and legs. (*See generally* Tr. 1158, 1165, 1174, 1222, 1230, 1185-88). Plaintiff, however, has not offered any evidence or explanation concerning the relevancy of these hospitalization records to plaintiff's underlying application for DIB.

cane for ambulation and balance is clearly in the record[.]" (*Id.* at PAGEID 1428).  The
Commissioner argues in response that the ALJ did not err by omitting plaintiff's alleged need for
a cane from the RFC because the record does not establish that a cane was medically required.
(Doc. 18 at PAGEID 1452-55).

In the written decision, the ALJ noted that plaintiff testified "that she ambulates with a
prescribed cane"; "ambulated with a cane" following revisionary knee surgery that occurred in
July 2017; was "using a cane as of August 22, 2017"; and was using a cane when she attended
several sessions of physical therapy in mid-2018.  (Tr. 16-18).  The ALJ, however, did not
further discuss plaintiff's use of a cane, and she did not include the need to use a cane as a
limitation in plaintiff's RFC.  The Court finds that the ALJ did not commit error by either failing
to incorporate the need for a cane into the RFC or failing to explain the reasons for her decision.

A claimant's RFC is an assessment of the most a claimant "can still do despite
limitations."  20 C.F.R. § 404.1545(a)(1).  In formulating the RFC, the ALJ must consider all of
the claimant's impairments and symptoms and the extent to which they are consistent with the
objective medical evidence.  20 C.F.R. § 404.1545(a)(2), (3).  The claimant is responsible for
providing the medical evidence that goes into the RFC finding.  *Perry v. Berryhill*, No. 1:16-cv-
2970, 2018 WL 1393275, at *3 (N.D. Ohio Mar. 20, 2018) (citing 20 C.F.R. § 404.1545(a)(3)).
The RFC determination itself is reserved for the ALJ.  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x
149, 157 (6th Cir. 2009); *Perry*, 2018 WL 1393275, at *3 (citing 20 C.F.R. § 404.1546(c); SSR
96-5p, 1996 WL 374183, at *5 (July 2, 1996)).

The ALJ is not required to incorporate the use of a cane into the RFC unless the cane is
medically required, in which case the cane is considered a limitation on a claimant's ability to
work.  *See Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002); *see also Baker v.*

*Comm'r of Soc. Sec.*, No. 2:19-cv-4323, 2020 WL 2213893, at *7 (S.D. Ohio May 7, 2020).

Social Security Ruling 96-9p explains when a cane or other hand-held assistive device is

"medically required" and the vocational implications of that medical need for a claimant's RFC.

SSR 96-9p specifically provides, in pertinent part:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996).

Plaintiff testified at the ALJ hearing that she uses a cane "daily" for "[b]alance and

walking." (Tr. 43; *see also* Tr. 44). Plaintiff further testified that the cane was prescribed, but

she could not recall exactly when it was prescribed, or which doctor/hospital specifically

prescribed it. (*Id.*). As best plaintiff could remember, plaintiff testified that she may have been

prescribed the cane at "Fairfield Mercy." (*Id.*). The evidence plaintiff cites to show the ALJ was

bound to include her use of a cane in the RFC is not adequate "medical documentation" to

establish that her use of a cane was "medically required." *See* SSR 96-9p, 1996 WL 374185, at

*7. Although plaintiff testified that her cane was prescribed, the "burden to prove through

clinical evidence that a cane is medically required" is on the claimant. *Baker*, 2020 WL

2213893, at *7 (quoting *Strain v. Comm'r of Soc. Sec. Admin.*, No. 5:12-cv-1368, 2013 WL

3947160, at *2 (N.D. Ohio Aug. 1, 2013)). Moreover, "hearing testimony regarding [the

plaintiff's] use of a cane does not qualify as medical documentation and is not sufficient to

establish that a cane was medically required." *Graham v. Comm'r of Soc. Sec.*, No. 2:20-cv-

14

2476, 2021 WL 2801374, at *5 (S.D. Ohio July 6, 2021) (citing *White v. Saul*, No. 1:20-cv-236, 2021 WL 1145463 (N.D. Ohio Mar. 25, 2021)).  Plaintiff has not cited any record evidence, other than her own testimony at the hearing, documenting that her cane was prescribed. Likewise, in the Court's thorough review of the medical evidence of record, the undersigned was unable to find any medical documentation stating that a cane was prescribed or medically required.

While record evidence shows that plaintiff reported to medical sources that she used a cane, and she was occasionally observed using a cane (*see* Tr. 249, 1123, 1042), "indications in the medical records that Plaintiff was using a cane [are] insufficient to establish that the cane was medically required." *Parrish v. Berryhill*, No. 1:16-cv-1880, 2017 WL 2728394, at *12 (N.D. Ohio June 8, 2017), *report and recommendation adopted sub nom*, *Parrish v. Comm'r of Soc. Sec.*, 2017 WL 2720332 (N.D. Ohio June 23, 2017).  Even though plaintiff testified that she uses or has used a cane, this does not satisfy the medical documentation requirement; she must provide evidence that she required the use of a cane and the circumstances under which she needed to use it.  *Krieger v. Comm'r of Soc. Sec.*, No. 2:18-cv-876, 2019 WL 1146356, at *6 (S.D. Ohio Mar. 13, 2019), *report and recommendation adopted*, 2019 WL 3955407 (S.D. Ohio Aug. 22, 2019) (citing SSR 96-9P, 1996 WL 374185, at *7).  *See also Strain*, 2013 WL 3947160, *2 (the plaintiff failed to "meet her burden to demonstrate through the use of clinical evidence that the cane is necessary"); *Scroggins v. Comm'r of Soc. Sec.*, No. 16-11913, 2017 WL 4230650, at *4 (E.D. Mich. Sept. 25, 2017) (ALJ's conclusion that plaintiff failed to establish need for a cane was reasonable, even though she testified she was prescribed a cane and documentation showed she received a cane, given there was no specific evidence in the record establishing that she needed the cane and no medical documentation describing circumstances in

which a cane was required); *Ross v. Comm'r of Soc. Sec*., No. 2:17-cv-169, 2018 WL 580157, at

*6 (S.D. Ohio Jan. 29, 2018) (ALJ decision that the claimant did not medically require a cane

was substantially supported where the records regarding her use of a cane were inconsistent, she

had been observed ambulating normally, and no doctor opined that she needed a cane and

circumstances in which a cane was required).

The record in this case does not include the necessary medical documentation because

plaintiff has not pointed to "any medical documentation establishing that a cane is medically

necessary or describing the circumstances for which it is needed, as SSR 96-9p requires."

*Krieger*, 2019 WL 1146356, at *6.  She has not carried her burden "to demonstrate through

clinical evidence that a cane is medically necessary."  *Strain*, 2013 WL 3947160, *2; SSR 96-9p,

1996 WL 374185, at *7.  Her reports to her providers that she was using a cane, and observations

of her using a cane, do not suffice.  *See Scroggins*, 2017 WL 4230650, at *4 (the ALJ was

reasonable in concluding that the claimant failed to establish that a cane was medically necessary

when no medical source opined that she needed the cane).  Overall, the record does not establish

that plaintiff's cane was medically required or the specific circumstances under which the cane

was needed.  Substantial evidence therefore supports the ALJ's decision to omit the need to use a

handheld assistive device from the RFC finding.

Plaintiff also claims that the ALJ erred by failing to "list specific reasons for why the

cane was not required for ambulation and balance."  (Doc. 13 at PAGEID 1428).  An "ALJ is not

required to 'discuss every piece of evidence in the record to substantiate'" her decision.  *Baker*,

2020 WL 2213893, at *6 (quoting *Conner v. Comm'r of Soc. Sec*., 658 F. App'x 248, 254 (6th

Cir. 2016)) (citing *Thacker v. Comm'r of Soc. Sec*., 99 F. App'x 661, 665 (6th Cir. 2004)).  As

previously discussed, the ALJ noted in her written decision plaintiff's allegations that she used a

cane, and she was observed using a cane. (Tr. 16-18). These reports and observations of plaintiff's use of a cane are reflected in the medical records. Plaintiff, however, has not pointed to additional records that show the cane she reported using and was observed using was "medically required." *See* SSR 96-9p, 1996 WL 374185, at *7. No medical provider offered an opinion or otherwise indicated that plaintiff needed to use an assistive device and under what circumstances.

Because plaintiff has not pointed to medical documentation in the record that shows her cane was medically required, any error the ALJ committed by failing to evaluate plaintiff's use of a cane more thoroughly was harmless error. *See Clevenger v. Comm'r of Soc. Sec.*, No. 2:19-cv-4512, 2020 WL 2092387, at *9 (S.D. Ohio May 1, 2020) (ALJ's failure to consider whether the plaintiff required an assistive device to ambulate was harmless error where the plaintiff was prescribed a cane only in response to her self-report of difficulty, which "fell short of the medical documentation establishing the need for a hand-held assistive device" under SSR 96-9p); *Elliott v. Comm'r of Soc. Sec.*, No. 2:19-cv-3445, 2020 WL 746597, at *9 (S.D. Ohio Feb. 14, 2020) ("even if the omission of any cane-related discussion was error, it was harmless error"; doctor's opinion that the plaintiff occasionally required the use of a cane on uneven surfaces was based on the plaintiff's self-report, which fell short of the medical documentation required). Remand for a more substantive analysis and explanation of the alleged medical need for a cane would be futile because "even a more substantive inquiry would yield the same result: that [plaintiff] cannot demonstrate that she needs, as a matter of medical necessity," to use a cane. *Strain*, 2013 WL 3947160, at *3. Accordingly, plaintiff's first assignment of error is overruled.

### 2.  The ALJ did not err in giving little weight to the FCE

In her second assignment of error, plaintiff argues that the ALJ erred in giving limited weight to the FCE completed by physical therapist Ms. Crothers.  (Doc. 13 at PAGEID 1428-30).  Plaintiff specifically argues that she "is only able to use her hands occasionally" and the "evidence supports the ability to only have occasional use of the hands and supports the conclusions of the FCE."  (*Id*. at PAGEID 1429-30; *see also* Doc. 21 at PAGEID 1466-67).  It appears that plaintiff also argues that the "ALJ should have considered the FCE as a treating-source opinion[.]"  (Doc. 13 at PAGEID 1428).

The ALJ gave Ms. Crothers' opinions contained in the FCE "limited weight."  (Tr. 19). The ALJ explained that "the limitations in the opinion are not consistent with or supported by the evidence of record."  (*Id*.).  Specifically, the ALJ stated that plaintiff's report of "hand weakness as her primary issue" is not otherwise reflected in the record.  (*Id*.).  The ALJ also noted there were inconsistencies between the FCE and the corresponding restrictions and limitations imposed by Ms. Crothers.  Specifically, the ALJ noted that Ms. Crothers imposed "several postural and manipulative restrictions" despite plaintiff "exhibit[ing] no balance issues."  (*Id*.). The ALJ specified that the limitations in the FCE were "predicated . . . on a single examination of [plaintiff] and was thus not a treating source."  (*Id*.).  Finally, the ALJ stated, "[t]he fact that a physical therapist rendered this assessment limits the weight that I can assign this assessment, as a physical therapist is not an acceptable medical source."  (*Id*.).

To the extent that plaintiff contends the "ALJ should have considered the FCE as a treating-source opinion" (Doc. 13 at PAGEID 1428), plaintiff's argument is without merit.  In support for the argument that the FCE should have been evaluated under the treating physician standard, plaintiff cites to *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546 (6th Cir. 2020).  (*Id*.).

18

The Sixth Circuit's decision in *Hargett*, however, is factually distinct from the instant matter. There, the Court of Appeals determined that the presence of the signature of the plaintiff's primary care physician on the FCE form, which was completed by a physical therapist, was sufficient to elevate the FCE to a treating-source opinion. *Id.* The Sixth Circuit explained that the ALJ should have considered the FCE as a treating source opinion because the plaintiff's primary care physician referred plaintiff for the FCE and thereafter signed off on the results. *Id.* at 554.

Although Dr. Wilson referred plaintiff for an FCE (*see* Tr. 992), there is no indication, and plaintiff has not presented evidence in the record, that Dr. Wilson's signature was present on the FCE form. (*See* Tr. 1000). Notably, the location on the FCE form where Dr. Wilson could have included his signature was left blank. (*Id.*). Therefore, the Sixth Circuit's decision in *Hargett* is inapplicable to the facts of this case, and the ALJ did not err by failing to consider the FCE as a treating source opinion.

Rather, it is well-established that under the regulations and rulings applicable to plaintiff's claim, only "acceptable medical sources" as defined under former 20 C.F.R. § 404.1513(a) can provide evidence which establishes the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight. *See* SSR 06-03p, 2006 WL 2329939, *2.

A physical therapist, like Ms. Crothers, is not an "acceptable medical source" as defined under the applicable Social Security rules and regulations but instead falls under the category of "other source." *Compare* former 20 C.F.R. § 404.1513(a) (listing "acceptable medical sources") with former 20 C.F.R. § 404.1513(d)(1) (medical sources not listed in § 404.1513(a), such as physicians' assistants, chiropractors, and therapists, are considered to be "other sources" rather

than "acceptable medical sources"). *See also Nierzwick v. Comm'r of Soc. Sec.*, 7 F. App'x 358, 363 (6th Cir. 2001) (physical therapist's report not afforded significant weight because therapist not recognized as an acceptable medical source). Because physical therapists are not considered acceptable medical sources under the regulations, the ALJ was not required to give "good reasons" under the treating physician rule or any special deference to Ms. Crothers' findings, reports, or opinions contained in the FCE.

Although information from "other sources" cannot establish the existence of a medically determinable impairment, the information "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939, at *2; former 20 C.F.R. § 404.1513(d). Factors to be considered in evaluating opinions from "other sources" who have seen the claimant in a professional capacity include how long the source has known the individual, how frequently the source has seen the individual, how consistent the opinion of the source is with other evidence, how well the source explains the opinion, and whether the source has a specialty or area of expertise related to the individual's impairment. SSR 06-03p, 2006 WL 2329939, at *4. *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). The ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6.

Because Ms. Crothers is not an acceptable medical source, the ALJ was not bound to weigh her opinion in accordance with the regulatory factors. The ALJ, however, complied with the regulations by considering Ms. Crothers' opinion and discounting it for valid reasons which

are substantially supported by the evidence. Specifically, the ALJ reasonably concluded that plaintiff's report of "hand weakness as her primary issue" is not otherwise reflected in the record. (Tr. 19). Specifically, plaintiff reported to Ms. Crothers that "her primary issue [was] hand weakness." (Tr. 992). Plaintiff stated that she had thumb pain and swelling for over a year and the pain was worse in her left thumb. (*Id*.). Plaintiff stated her hand pain limited her ability to grasp objects and hold items with both hands, and she had difficulty with household chores such as sweeping and vacuuming and holding cooking utensils and pans because of the pain in her hands. (*Id*.). The ALJ reasonably concluded that plaintiff's report of hand pain to Ms. Crothers is not otherwise established in the record. The ALJ's Step Two finding is insightful in this regard. At Step Two of the sequential evaluation process, the ALJ reasonably determined, among other things, that plaintiff did not have a medically determinable hand impairment. The ALJ stated:

> There is no documentation consisting of medical signs and findings to establish the existence of a medically determinable hand impairment in this [] claimant. Specifically, the claimant complained of hand issues during a functional capacity evaluation. I asked the claimant's representative [at the hearing] if additional evidence supported the claimant's allegations of hand complaints but he cited nothing other than the functional capacity evaluation. [*See* Tr. 30, 50-51]. Although the claimant indicated that she attended physical therapy for this condition, the record does not document such treatment. Therefore, I cannot consider a hand impairment to be a "severe" impairment in this case, as there is no evidence of a medically determinable impairment that lasted a continuous period of at least 12 months.

(Tr. 15).

It does not appear that plaintiff challenges the ALJ's Step Two finding. Rather, plaintiff argues that the "evidence supports the ability to only have occasional use of the hands and supports the conclusions of the FCE." (Doc. 13 at PAGEID 1429). The record, however, does not support plaintiff's argument. Rather, the Court's thorough review of the record reveals only

a single instance, aside from her complaints to Ms. Crothers during the FCE, where plaintiff reported hand pain. (Tr. 1151). Citing to two treatment notes, Tr. 1123 and Tr. 1154, plaintiff argues that in addition to the FCE, plaintiff's diagnosis of polyneuropathy "could cause numbness and weakness in the hands." (Doc. 21 at PAGEID 1467). Tr. 1123 is a September 11, 2018 treatment note from Dr. Banks. Although Dr. Banks diagnosed plaintiff with polyneuropathy associated with underlying disease, nowhere does Dr. Banks opine, and the physical examination did not reveal, that this diagnosis caused any numbness or weakness in plaintiff's hands. (*See* Tr. 1120-25). Significantly, plaintiff did not report any numbness or weakness in her hands to Dr. Banks in this treatment note. Rather, plaintiff presented with "hypertension" and a "neurologic problem" with "focal sensory loss and a loss of balance" as plaintiff's primary symptoms. (Tr. 1120). Tr. 1154 is a December 11, 2018 treatment note with Dr. Banks. As previously mentioned, plaintiff complained of "hand pain" in this note, but the physical examination revealed no findings that Dr. Banks related to plaintiff's hand pain. (Tr. 1151-54). Further, Dr. Banks did not opine that plaintiff's polyneuropathy diagnosis caused any numbness or weakness in plaintiff's hands. The record demonstrates that plaintiff did not present with any complaints of hand pain following this treatment note. The ALJ therefore reasonably gave the FCE "limited weight" because plaintiff's report of "hand weakness as her primary issue" is not otherwise reflected in the record. (Tr. 19).

Moreover, the ALJ reasonably concluded that Ms. Crothers' inclusion of postural and manipulative restrictions was inconsistent with her examination because plaintiff "exhibited no balance issues." (*Id.*). The ALJ committed no error in evaluating Ms. Crothers' opinion and giving it limited weight. The ALJ was not required to give any special deference to the opinion

of Ms. Crothers, a physical therapist who only evaluated plaintiff on a single occasion. Plaintiff's second assignment of error is therefore overruled.[5]

### 3. The ALJ committed no error in the evaluation of plaintiff's subjective complaints of pain and physical limitations

In her third assignment of error, plaintiff alleges that the ALJ's assessment of plaintiff's subjective complaints of pain and physical limitations is not supported by substantial evidence. (Doc. 13 at PAGEID 1430-31).  Specifically, plaintiff argues that the ALJ erred in her determination that plaintiff's statements concerning the intensity, persistence, and limiting effects of her impairments were inconsistent with the medical evidence.  (*Id*. at PAGEID 1430). Plaintiff contends that her own "testimony is completely supported by the records" (*Id*.) and "further substantiates her complaints of pain and fatigue, unsteady gait which alone limited her to less than sedentary work."  (*Id*. at PAGEID 1431).  The Commissioner generally alleges that substantial evidence supports the ALJ's evaluation of plaintiff's subjective statements.  (Doc. 18 at PAGEID 1457-59).

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.  *Rogers v. Comm'r of Soc. Sec*., 486 F.3d 234, 247 (6th Cir. 2007) (citations omitted).  In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  *See also Walters v. Comm'r of Soc. Sec*., 127 F.3d 525, 531 (6th Cir. 1997) ("[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an

---

[5] Moreover, to the extent that plaintiff argues that the ALJ erred in the RFC determination by failing to include a limitation that plaintiff "is only able to use her hands occasionally" (Doc. 13 at PAGEID 1430), plaintiff fails to cite to any record evidence, apart from her testimony, that would merit the inclusion of this limitation and restriction in the RFC.

ALJ is charged with the duty of observing a witness's demeanor and credibility."). Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Id*.

Title 20 C.F.R. § 404.1529 and Social Security Ruling 16-3p, 2016 WL 1119029, *3 (March 16, 2016) describe a two-part process for evaluating an individual's subjective statements about symptoms, including pain.[6] First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. *See also* 20 C.F.R. § 404.1529(c)(3). The ALJ's assessment of a claimant's subjective complaints and limitations must be supported by substantial evidence and be based on a consideration of the entire record. *Rogers*, 486 F.3d at 247 (internal quotation omitted). The ALJ's explanation of her decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id*. at 248.

The ALJ found, and cited three primary reasons why, plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but plaintiff's

---

[6] SSR 16-3p, 2016 WL 1119029, which "provides guidance about how [the SSA] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms," superseded SSR 96-7p and became applicable to decisions issued on or after March 28, 2016. *See* SSR 16-3p, 2017 WL 5180304 (October 25, 2017) (clarifying applicable date of SSR 16-3p).

statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical and other evidence in the record. (Tr. 15, 17-18).

First, the ALJ found plaintiff's testimony at the hearing concerning the reason she stopped working inconsistent with prior statements she made to medical providers. (*Id*.). Specifically, the ALJ explained that plaintiff "portrayed herself as retired during a functional capacity evaluation performed months before the hearing" (*Id*.) (citing Tr. 992) and stated on her disability report that she stopped working because her "employer denied her request to work from home." (*Id*.) (citing Tr. 189). Both are reasons unrelated to any alleged disability. At the hearing, however, plaintiff "testified that she could not do the job, so she retired [*see* Tr. 35], which is somewhat inconsistent with her prior statements." (*Id*.). Second, the ALJ found plaintiff "attended only conservative treatment, incommensurate with her allegations of ongoing debilitating exertional limitations." (Tr. 18). Plaintiff, however, does not address these two reasons put forth by the ALJ for discounting her subjective allegations of pain and limitations. The ALJ reasonably discounted plaintiff's allegations of debilitating limitations based on this evidence.

Rather, it appears that plaintiff argues the ALJ erred by finding that plaintiff's testimony was inconsistent with the medical evidence, the third reason cited by the ALJ. (Doc. 13 at PAGEID 1430). Plaintiff contends her testimony is supported by the records because "there are a number of notations about muscle spasms and body pain, leg cramps, and nerve pain from polyneuropathy in the records." (Doc. 13 at PAGEID 1430) (citing Tr. 414, 549, 556, 559-561, 563, 569, 573-575, 704, 709, 717, 732-733, 750, 766, 772, 870, 876, 880, 965, 1138, 1142, 1154).

The ALJ found that plaintiff "experienced [and testified about] symptoms that no acceptable medical source [had] attributed to a medically determinable impairment."  (Tr. 15). Specifically, at the hearing, plaintiff testified that she experienced muscle spasms and leg cramps.  (*See* Tr. 33, 35, 39-40, 43, 45-47).  The ALJ, however, found that no medical source attributed plaintiff's symptoms to a medically determinable impairment based on these symptoms:

> On a related note, the record corroborates [plaintiff's] accounts of muscle spasms (see, e.g. 2F/159 [Tr. 415]; 3F/32, 51 [Tr. 551, 570]; and 5F/33 [Tr. 870]).  The record also references [plaintiff's] complaints of leg cramps (4F/10 [Tr. 704]). However, the record documents no specific pathology that would cause these symptoms as results of EMGs have yielded negative results (see, e,g, 3F/99-101 [Tr. 618-20] and 4F/17-19, 23 [Tr. 711-13, 717]).  Therefore, I cannot ascribe these symptoms to a severe impairment either.  Nonetheless, I considered all reported symptoms below in assessing the residual functional capacity.

(Tr. 15).  As the Commissioner correctly argues, the burden of establishing a medically determinable impairment is on the plaintiff, and testimony, alone, cannot form the basis of a medically determinable impairment or severe impairment.  (Doc. 18 at PAGEID 1458).  The regulations confirm that a symptom is not a medically determinable impairment and "no symptom by itself can establish the existence of such an impairment."  SSR 96-4p, 1996 WL 374187, at *1 (July 2, 1996).  Plaintiff has not identified any objective or diagnostic evidence that she has any medically determinable impairment related to her muscle spasms and leg cramps.  *See Id*. ("No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment.").

The remaining notations of "body pain" and nerve pain from polyneuropathy cited by plaintiff do not show the ALJ erred in assessing the supportability of plaintiff's subjective

complaints. Many of the records cited by plaintiff pre-date her alleged onset date of disability and are not relevant. (Doc. 13 at PAGEID 1430, citing Tr. 414, 559-561, 563, 569, 573-575, 704, 709, 717, 732-733). Similar to plaintiff's subjective complaints of muscle spasms and leg cramps, plaintiff has failed to explain how her generalized complaints of "body pain" are related to any medically determinable impairment. Finally, while plaintiff alleges that some of her complaints of pain, numbness, and weakness may be attributable to a diagnosis of polyneuropathy for which she was prescribed gabapentin and vitamin B-12, plaintiff has not challenged the ALJ's Step Two finding in this regard nor pointed to any evidence showing the intensity, persistence, or functional limitations resulting from this diagnosis. *See* 20 C.F.R. § 404.1529.

Upon review of the ALJ's determination concerning plaintiff's subjective allegations of pain and limitations, the Court finds that the ALJ's finding is substantially supported by the evidence of record and is entitled to deference. Plaintiff's third assignment of error is therefore overruled.

## IT IS THEREFORE ORDERED THAT:

The decision of the Commissioner is **AFFIRMED** and this case is closed on the docket of the Court.

Date: 9/2/2021

Karen L. Litkovitz
Chief United States Magistrate Judge

27